# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

HILDA L. SOLIS, Secretary of Labor,
United States Department of Labor,

                        Plaintiff,

      v.

MARK ATCHISON; and the ZUBER LANDSCAPE,
INC. DAVIS-BACON TURNKEY PENSION PLAN,

                        Defendants.

CASE NO.
**2:12-cv-00417-EAS-MRA**

JUDGE:
EDMUND A. SARGUS

## CONSENT ORDER AND JUDGMENT

Plaintiff, Hilda L. Solis, Secretary of Labor, United States Department of Labor,
(the "Secretary") pursuant to the provisions of the Employee Retirement Income Security
Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001, *et seq.*, filed a complaint against
defendants, Mark Atchison and the Zuber Landscape, Inc. Davis-Bacon Turnkey Pension
Plan, alleging breaches of fiduciary responsibilities under ERISA §§ 403(a)and (c)(1) [29
U.S.C. §§ 1103(a) and (c)(1)], 404(a)(1)(A) [29 U.S.C. § 1104(a)(1)(A)], 406(a)(1)(D)
[29 U.S.C. § 1106(a)(1)(D)], 406(b)(1) [29 U.S.C. § 1106(b)(1)], 406(b)(2) [29 U.S.C.
§ 1106(b)(2)] , and 412(a) and (b) [29 U.S.C. § 1112(a) and (b)], with respect to the
Zuber Landscape, Inc. Davis-Bacon Turnkey Pension Plan (the "Plan").

Defendants have waived service of process of the complaint and admit to the
jurisdiction of this Court over them and the subject matter of this action.

The Secretary and Defendants have agreed to resolve all matters in controversy in this action between them (except for the imposition by the Secretary of any penalty pursuant to ERISA § 502(l), 29 U.S.C. § 1132(l), and any proceedings related thereto), and do now consent to entry of a Consent Order and Judgment by this Court in accordance therewith.

The parties agree that, if the Secretary of Labor assesses a penalty pursuant to ERISA §502(l) in connection with the violations alleged in this matter, the "applicable recovery amount" shall include all amounts paid in accordance with this Consent Judgment and Order.

Upon consideration of the record herein, and as agreed to by the parties, the Court finds that it has jurisdiction to enter this Consent Order and Judgment.

IT IS THEREFORE ORDERED that:

1. Defendant Atchison is permanently enjoined and restrained from violating the provisions of Title I of ERISA, 29 U.S.C. § 1001 *et seq.*

2. Defendant Atchison violated his ERISA fiduciary duties with respect to the Plan as alleged in the Secretary's complaint. Defendant Atchison is liable to the Plan in the total amount of $31,152.48 which represents the prohibited transfer of Plan assets totaling $22,301.93 from the Plan's account with Nationwide Life Insurance Company ("Nationwide") and lost opportunity costs totaling $8,850.55 as of March 15, 2013, that accrued as a result of this prohibited transfer. The Plan also has an account with DWS Investments.

3. As a result of defendant Atchison's ERISA violations, Defendant Atchison owes and is ordered to restore $31,152.48 to the Plan.

4.    Defendant Atchison has demonstrated a current inability to pay the aforementioned $31,152.48 owed to the Plan. His demonstration of current inability to pay includes his completion of a Declaration of Financial Status executed under penalty of perjury and his U.S. Tax Returns. Defendant Atchison shall complete and submit to the Regional Director, U.S. Department of Labor - Employee Benefits Security Administration, 1885 Dixie Hwy, Ste 210, Ft. Wright, KY 41011-2664859-578-4680; 859-578-4688 (Fax) ("EBSA Regional Director") an annual Declaration of Financial Status, a form copy of which is attached hereto as **Exhibit A**, on or before May 15 of each year beginning on May 15, 2013, and continuing for seven (7) consecutive years or until the amount ordered in paragraph 3 of this Judgment is repaid in full, whichever occurs first, or if not required by federal law to file an annual federal tax return, Defendant Atchison shall provide a statement under oath that such filing is not required.

5.    To the extent that Defendant Atchison's financial status permits, he shall restore to the Plan the total amount of $31,152.48, as set forth in paragraph 3 above, plus post-judgment interest pursuant to 28 U.S.C. Section 1961, according to the following schedule of his income, beginning on May 15, 2013 and continuing for seven (7) consecutive years, or until the amounts recited in this judgment are repaid in full, whichever occurs first:

> 10% of Defendant Atchison's reportable gross income in excess of $35,000 up to $50,000 for the preceding year on or before May 15;
>
> 25% of Defendant Atchison's reportable gross income in excess of $50,000 for the preceding year on or before May 15;
>
> 100% of any bequest, inheritance, gifts over $5,000, lottery and gambling winnings over $5,000 or proceeds of any life insurance policy Defendant Atchison may receive within 30 days of receipt.

3

6.      If Defendant Atchison fails to comply with the payment schedule above or it is found that the documents he provided or provides in the future regarding his financial status are untrue, the full amount of losses owed to the Plan of $31,152.48 plus accrued post-judgment interest pursuant to 28 U.S.C. Section 1961 shall immediately become due and payable.

7.      In restoring the monies to the Plan referenced in paragraph 3, Defendant Atchison shall send the monies directly to the participant and/or beneficiaries in an amount equal to each participant's pro-rata share of the restoration as illustrated in **Exhibit B** attached hereto.  Proof of payments shall be sent within ten (10) business days of issuance to:  Cincinnati Regional Director, Employee Benefits Security Administration at U.S. Department of Labor, EBSA, Cincinnati Regional Office, 1885 Dixie Highway, Suite 210, Ft. Wright, Kentucky 41011-2664.

8.      Defendant Atchison shall exercise reasonable care and diligence to identify and locate each participant and beneficiary of the Plan who is eligible to receive a distribution. Defendant Atchison may rely upon the procedures for locating lost participants that are described in Field Assistant Bulletin 2004-02 of the Department of Labor, Employee Benefits Security Administration (**Exhibit C**) and Revenue Procedure 94-22 of the Internal Revenue Service.   If, after exhausting these procedures, participants or their beneficiaries cannot be located for the purposes of distribution, Defendant Atchison shall promptly notify the Regional Director, EBSA, U.S. Department of Labor, 1885 Dixie Highway, Room 210, Fort Wright, KY  41011, of the names, last-known addresses and social security numbers of said participants or beneficiaries.

4

9.    Defendant Atchison shall immediately be removed as a fiduciary to the Plan and shall be permanently enjoined from serving or acting as a fiduciary or service provider with respect to any ERISA-covered employee benefit plan.

10.    **Advanced Pension Solutions, Inc. 6830 Commerce Court Drive, Blacklick, Ohio 43004**, is hereby appointed as the independent fiduciary for the Plan. The Independent Fiduciary shall distribute Plan assets to participants and beneficiaries who have funds in the Plan, including the DWS Investments account, as soon as administratively feasible. The independent fiduciary shall have the following additional powers, duties and responsibilities:

a.    The independent fiduciary shall have responsibility and authority to collect, liquidate, and manage such assets of the Plan for the benefit of the eligible participants and beneficiaries for the Plan who are entitled to receive such assets, until such time that the assets of the Plan are distributed to the eligible participants and beneficiaries of the Plan;

b.    The independent fiduciary shall have responsibility and authority for terminating the Plan. Such termination shall be made in accordance with the Plan's governing documents, the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*., and the Internal Revenue Code. While not required to obtain a determination letter to terminate the Plan under ERISA or the Internal Revenue Code, the independent fiduciary shall make a determination as to whether it is prudent to go through the determination letter process for the Plan.  The independent fiduciary's responsibilities with respect to the termination of the Plan shall include, but not be limited to, liquidating the Plan's assets, communicating with participants regarding the termination of the Plan and their disbursal options, calculating the participant and beneficiaries account balances, and filing appropriate termination papers with the Internal Revenue Service and the Department of Labor;

c.    The independent fiduciary shall exercise reasonable care and diligence to identify and locate each participant and beneficiary of the Plan who is eligible to receive a payment under the terms of this Consent Order and Judgment and to disburse to each such eligible participant or beneficiary the payment to which he or he is entitled;

d.    The independent fiduciary shall have full access to all data, information and calculations in the Plan's possession or under its control,

including that information contained in the records of the Plan's custodial trustees and other service providers, bearing on the distribution of benefit payments, participant account balances and current Plan assets;

   e.     The independent fiduciary may retain such persons and firms including but not limited to accountants and attorneys, as may be reasonably required to perform his or her duties hereunder;

   f.     The independent fiduciary shall obtain bonding in an amount that meets the requirements of ERISA § 412, 29 U.S.C. § 1112.  The costs incurred by the independent fiduciary in obtaining such bonding shall be paid by the Plan;

   g.     Within 30 days of the distribution of all of the Plan's assets, the independent fiduciary shall provide the EBSA Regional Director, at EBSA, Fort Wright Executive Building I, 1885 Dixie Highway, Suite 210, Fort Wright, Kentucky, 41011-2664, with a report identifying the distributions made by the Plan since the independent fiduciary's appointment;

   h.     The independent fiduciary shall not be responsible for bringing any action on behalf of the Plan against any prior fiduciaries or service providers of the Plan for violations of state or federal law that occurred prior to the date of the independent fiduciary's appointment.  The independent fiduciary shall be responsible for pursuing any violations of ERISA that occur after his or her appointment as the independent fiduciary by this Court;

   i.     The independent fiduciary may not be held responsible or liable for any claim against the Plan or related entities that existed, arose, matured or vested prior to his or her appointment as independent fiduciary for the Plan; and

   j.     For the service performed pursuant to this Consent Order and Judgment, the independent fiduciary shall receive compensation not to exceed $1,325.00, as identified in the fee proposal attached hereto as **Exhibit D.** The cost of the fidelity bond is included in the $1,325.00 sum.

   11.     Defendant Atchison agrees that he will notify the EBSA Regional Director

within seven (7) days of any of the following: (i) change of name; (ii) change of

residence; (iii) change of telephone number; (iv) change of mailing address; (v) change of

employment; and (vi) any bequests, life insurance proceeds, lottery or gambling

winnings, gifts, or any other income in excess of $5,000. The requirements of this

paragraph shall apply until May 15, 2020 or until the amounts recited in this Judgment are repaid in full, whichever occurs first.

12. Defendant Atchison in his capacity as a fiduciary of the Plan, (a) failed to hold Plan assets in trust; (b) failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of Plan administration; (c) caused the Plan to engage in transactions which he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of a party in interest of Plan assets; (d) dealt with assets of the Plan in his own interest or for his own account; and (e) in his individual or other capacity acted in transactions involving the Plan on behalf of parties (or represented parties) whose interests were adverse to the interests of its participants or beneficiaries.

13. The $31,152.48 are assets of the Plan and Defendant Atchison is liable to the Plan for this amount.

14. Defendant Atchison violated §§ 403(a)and (c)(1) [29 U.S.C. §§ 1103(a) and (c)(1)], 404(a)(1)(A) [29 U.S.C. § 1104(a)(1)(A)], 406(a)(1)(D) [29 U.S.C. § 1106(a)(1)(D)], 406(b)(1) [29 U.S.C. § 1106(b)(1)] and 406(b)(2) [29 U.S.C. § 1106(b)(2)] by the conduct set forth in paragraph 12, above.

15. Defendant Atchison's breach of his fiduciary duties under ERISA to the Plan, as set forth above, constitute defalcations while acting in a fiduciary capacity with respect to the Plan and its participants, within the meaning of 11 U.S.C. §523(a)(4).

16. In the event Defendant Atchison files for bankruptcy protection in the future, any amount of unpaid liability set forth in paragraphs 3 and 13 above, which

resulted from his breach of fiduciary duties, is, and shall be treated as, a nondischargeable

debt under §523(a)(4) of the Bankruptcy Code, 11 U.S.C. §523(a)(4).

17.     Each party agrees to bear his, her or its own attorneys' fees, costs and

other expenses incurred by such party in connection with any stage of this proceeding to

date including, but not limited to, attorneys' fees which may be available under the Equal

Access to Justice Act, as amended.

18.     The Court shall maintain jurisdiction over this matter only for purposes of

enforcing this Consent Order and Judgment.

19.     The Court directs the entry of this Consent Order as a final order.

20.     Nothing in this Consent Order and Judgment is binding on any

government agency other than the United States Department of Labor, Employee

Benefits Security Administration.


DATED _____3-19-2013_____, 2013


_____
UNITED STATES DISTRICT JUDGE

The parties hereby consent to the entry of this consent order and judgment:

## FOR THE SECRETARY OF LABOR:

**M. PATRICIA SMITH**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

**BENJAMIN T. CHINNI**
Associate Regional Solicitor

**MICHELLE M. DeBALTZO**
(Ohio Reg. No. 0067998)
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
1240 East Ninth St.
Cleveland, Ohio 44199
(216) 522-3879; (216) 522-7172 (Fax)
debaltzo.michelle@dol.gov

**CARTER M. STEWART**
United States Attorney
Southern District of Ohio
303 Marconi Street, Suite 200
Columbus, Ohio 43215
(614) 469-5715; (614) 469-5653 (Fax)

DATED: 3/15/13

## FOR DEFENDANT MATK ATCHISON:

**MARK ATCHISON**
Individual
72 N. Township Road, B,
Pataskala, Ohio 43062
(740) 927-4457

DATED: 3/8/13

## FOR DEFENDANT ZUBER LANDSCAPE, INC. DAVIS-BACON TURNKEY PENSION PLAN

**MARK ATCHISON**
Fiduciary of the Zuber Landscape, Inc.
 Davis-Bacon Turnkey Pension Plan
72 N. Township Road, B,
Pataskala, Ohio 43062
(740) 927-4457

DATED: 3/8/13

## AFFIDAVIT CONCERNING FINANCIAL STATUS

STATE OF ******           )
                          )
COUNTY OF *******         )

I, Mark Atchison, being duly sworn, affirm and say:

I am over the age of 21 years and reside at

_____. I make this

affidavit (the "Affidavit") at the request of Secretary of Labor, United States Department of

Labor ("the Secretary"), by and through her counsel, for the purpose of informing the Secretary

of my current financial condition as condition to a proposed compromise and settlement of

judgment ("Settlement") owed by me as Defendant or proposed Defendant in a lawsuit filed by,

or potentially filed by, the Secretary.

I know that the Secretary will rely upon the accuracy of the statements and

representations made by me in this Affidavit in inducing the Secretary into any acceptance of a

proposed Settlement.  I further acknowledge that any misrepresentation or omission by me of

information in this Affidavit may subject me to criminal penalties, contempt action and/or civil

action and the Secretary may rescind any settlement with me.

I have no property or assets and have no income except as hereinafter stated.

When the Affidavit describes assets that I "own" or "hold" or income that I "receive," the

description includes without limitation:

assets or properties which are owned or held by trustees, agents or nominees for my

benefit, or on my behalf, and income received by persons for my benefit or on my behalf; and

either

*(select and mark the option that applies)*

_____ (i)    since I have never been married, no spouse holds any assets or property; or

_____(ii)    since I am currently married, assets or properties which are owned or held by my

spouse, and income received by my spouse, except for assets, properties and income which

constitute the separate property of my spouse under application laws; or

_____ (iii)   since I am divorced, no current spouse holds any assets or property.  The divorce

was finalized in the past five (5) years; therefore, true and correct copies of the divorce decree

and the property settlement are attached hereto,        collectively as **Exhibit "A."**

On this the _____ day of _____, 2012, I further state as follows:

2

1.      I receive no gross income from any source whatsoever, except:

*(list every source and amount of an annualized basis)*

2.      I have no savings account or certificate of deposit at any financial institution, domestic or foreign, except:

*(list for each institution:  name and address; and for each account: type, style, number and current balance; and attach copies of financial institution statements for the past three years to the Affidavit as collectively **Exhibit "B"**)*

4

3.      I have no checking or cash management account at any financial institution, domestic or foreign, except:

> *(list for each institution name and address; and for each account: type, number and current balance; and attach copies of financial institution statements for the past three years to the Affidavit as collectively* **Exhibit "B")**

4. I have no traveler's checks or money orders in my possession or otherwise held on my behalf, except: *(list type and denomination and in whose possession such checks and money orders are located)*

5.     I receive no salary and I am not entitled to any current or deferred salary from any source,

except:

   *(list every source and amount on an annualized basis)*

7

6.    I receive no fees for management, technical or professional services rendered to any

individual, partnership, firm or corporation, or from any other source, except:

*(list every source and amount on an annualized basis)*

7.     I receive no commissions or royalties and I am not entitled to any current or deferred

commissions or royalties from any source, except:

   *(list every source and amount on an annualized basis)*

8.    I receive no stock dividends from any corporation, domestic or foreign, except:

*(list every source and amount on an annualized basis)*

9.      I receive no current or deferred bonus and I am entitled to no current or deferred bonus

from any source, except:

>       *(list every source and amount)*

10.     I receive no stock options, whether exercisable or not or vested or not, and I am entitled to no future stock options, except: *(list every source, amount of options, and value of options to which you have received since June 30, 2006 or will receive within the next 5 years)*

11.     I have no safe deposit box or access to any safe deposit box, except:

*(list name and address of each institution, each safe deposit box number and the contents thereof)*

12.  I own no real estate, including mineral interests therein, of any nature whatsoever, except:

*(List address, legal description and date and cost of acquisition of all real estate owned)*

13.     I have no ownership interest in any partnership, joint venture, corporation, of any sort, or

other legal entity, except:

*(list name and address of each partnership, joint venture, corporation legal entity, the*

*nature or percentage of the interest owned, and date and cost of each interest)*

15

14.    I own no mortgages and own no interest in any mortgages, except:

*(list amount, interest, description of each property mortgaged and identify each*

*mortgagor)*

15.    I own no shares or assets in any financial institution, except:

*(list name of each institution and each ownership interest)*

17

16.     I own no stocks, bonds, mutual funds, or other securities, except:

*(list each, including date and costs of acquisition)*

17.  I own no commodities, except:

*(list each, including date and cost of acquisition)*

18.    I have no account of any nature with any broker, except:    *(list name of each brokerage*

*account number and outstanding balance in each account; and attach copies of brokerage house*

*or account statements for the past three years to the Affidavit as collectively* **"Exhibit C"***)*

19.    I have no retirement or pension account and I am not a beneficiary of any retirement or pension account, except: *(list name of each institution, entity, or individual, each account number and current balance in each account; and attach copies of financial institution or other account statements for the past three years to the Affidavit as collectively* **"Exhibit D"***)*

21

20.     I have no account of any nature not previously listed above with any financial institution

or other entity or individual, except:

> *(list name of each institution, entity, or individual, each account number and current*
> *balance in each account; and attach copies of financial institution or other account*
> *statements for the past three years to the Affidavit as collectively* **"Exhibit D"***)*

22

21.     I have no power of attorney or other authority of any nature whatsoever, either over

stocks, bonds, commodity accounts, or other form of securities, except:

*(identify and describe all such property and beneficial owner(s) thereof)*

23

22.     I do not act as a trustee or fiduciary with respect to any property, either real or personal, except:

*(identify and describe all such property and beneficial owner(s) thereof)*

24

23.    I own no bonds or evidence of debt of any governments, except:

*(list all governmental debt issues owned and date and cost of acquisition of each)*

25

24.     I own no insurance policy of any type, except:

*(list name of each company, face amount of each policy, types of each insurance,*

*beneficiary and amounts borrowed thereon)*

25.　　I receive no dividends from any insurance company, except:　　*(list name of each company, face amount of each policy, types of each insurance, beneficiary and amounts borrowed thereon)*

27

26.    I pay no premium on any insurance policy, except:

*(list name of each company, face amount of each policy, types of each insurance,*

*beneficiary and amounts borrowed thereon)*

27.　　I am not the beneficiary of any insurance policy, except:　　*(list name of each company,*

*face amount of each policy, types of each insurance, beneficiary and amounts borrowed thereon)*

29

28.    I have no interest in any patents, inventions, trade names, trademarks, copyrights, or royalty agreements, except:

*(identify)*

29.     I have no claim against any insurance company except:     *(identify each company,*

*amount of each claim and description of each claim)*

30.     I have no claim against or interest in any estate or any trust of any person, whether living

or dead, except:

*(identify each estate or trust, amount of each claim, and description of each claim or*

*interest)*

31.     I have no claim against any person, whether living or dead, or any firm or corporation,

except:

*(identify each individual or entity, amount of claim, and description of each claim)*

32.    I am not a Plaintiff or Defendant in any action or proceeding now pending in any court,

except:

*(list the style of each case, case number, and court in which each case is pending)*

34

33.   I am not a party to any arbitration proceeding now pending before any arbitrator or

board of arbitration, except:

*(identify each proceeding)*

34. I have no funds, assets, or other things of value on deposit with attorneys and other third parties, excluding accounts with brokerage houses and insurers which I have identified elsewhere in this affidavit, except: *(list each such arrangement resulting in placement of funds, assets, or valuable things on deposit by date of deposit, identity by name and address of attorney and third party holding or arranging the deposit, and value of deposit)*

35.    I have no interest in any promissory notes, drafts or commercial paper, except:

*(identify with each the maker or drawer and the amount)*

37

36.    I am entitled to receive no money from any federal, state, county, or city government, or

agency or department thereof, except:

*(identify each agency or department and each amount)*

37.   I am entitled to no federal, state, county, city, or foreign tax refund, except:

*(identify and list each amount)*

38.    There are no judgments or decrees outstanding against me or in my favor, except:

*(list with each case, its style, case number and court which entered each judgment or decree and the amount awarded, and/or the nature of relief)*

.

40

39.     I have in effect no guaranty of the indebtedness or obligations of any individual,

corporation, partnership or other entity, except:

   *(identify with each the debtor, the amount of the indebtedness, and all holders/owners of*

*the indebtedness)*

41

40.   I have made no gifts valued in excess of five hundred and no/100 dollars ($500.00) since June 30, 2006, except:      *(list with each gift the approximate value thereof in terms of cost of acquisition, date of gift and the identity of the recipient)*

42

41.     I have made no conveyance of real or personal property for less than full value since June 30, 2006 including not only outright conveyances of assets but also no releases or waivers of any valuable claims or contract rights which I owned or held against other parties, except:

*(list each property transferred, the approximate value thereof in terms of costs of acquisition, all property or money received for each transfer (if any), date(s) of each transfer, and the identity of each recipient of the transfer)*

42.    Since June 30, 2006, I have made no payments to any financial institution or any other

holder/owner of my promissory notes, bonds, or other indebtedness, except for:

*(list with each payment the date, the amount, and the identity of the payee)*

43.    No real or personal property is held by others for my benefit, except:

*(list and describe each property held, the approximate value thereof in terms of costs of*

*acquisition, the date of acquisition, the location of the property, and the identity of each holder)*

44.    I am not indebted to any individual, corporation, partnership, or other entity, including

any financial institution, except:

*(list name of each institution, entity, or individual, current amount of each indebtedness,*

*and date each indebtedness was incurred)*

45.     I own no airplane, automobile, boat, trailer or any motor vehicle of any nature

whatsoever, except:

        *(list with each vehicle: its description, current location, serial number, and date and cost*

*of acquisition)*

46.     I am entitled to receive no money from any source either presently due or due in the

future, except:

>    *(list name and address of each source and the amount involved)*

47.    I do not own or have any interest in any work of art, collectible or antique, except:

*(list with each item: its description, current location, and date and cost of acquisition)*

48.    I own no house, dwelling place, condominium, apartment, or co-operative apartment,

except:

*(list with each property: its description, address, and the date and cost of acquisition)*

50

49.    I have no financial statement prepared for or by me, and I have issued no financial

statement to my bank, financial institution, firm, or person since June 30, 2006, except:

*(identify and attach copies of all such financial statements to the Affidavit collectively as*

**Exhibit "E"**)

50.  I am a custodian of no property for any minor or other individual or entity, except:

*(state description and acquisition cost of all such property and the identity of beneficial*

*owner)*

51.    I own, or have a beneficial interest in, no property, real or personal, in Switzerland or any other foreign country or territory outside of the continental United States, except:

*(Include with a description of item, its location, and the date and cost of acquisition)*

53

52.     Except for accounts previously stated in the Affidavit, I have no bank accounts, savings accounts or deposit accounts in financial institutions in any foreign country or territories outside the continental United States, except:

*(list for each institution: name and address; and for each account: type, style, number and current balance)*

53.     Since June 30, 2006, I have not, directly or indirectly, directed a foreign bank,

corporation, financial institution, brokerage house, or trustee or other entity holding assets in any

foreign country or in any territories outside the continental United States, to make any payments

or transfer any assets or other things of value to myself or other person or entity, except: *(list for*

*each institution: name and address; and for each payment or transfer: dollar amount, date, and*

*recipient by name and address)*

54.    Since June 30, 2006, I have not used a credit, debit, or ATM card that was issued by a foreign bank, corporation, financial institution, brokerage house, or other entity, or that used funds held by or in a foreign bank, trust, or other entity, except: *(list for each card: the card number, the name of the authorized cardholder, the issuing institution's name and address; and for each use: the dollar amount of transaction, date, and recipient by name and address)*

56

55.     Since June 30, 2006, I have not, directly or indirectly, sent, transferred, or caused to be sent or transferred, any moneys from the United States to any foreign trust or asset holding entity, other than for the immediate purchase of goods that were then sent back to the United States, except: *(list for each transfer: date, dollar amount, payer entity, payee entity,  reason and description for transfer)*

56.     Since June 30, 2006, I have not, directly or indirectly, established or caused to be established any foreign corporation, partnership, trust, or asset holding except: *(list for each entity: name and address, date created, capitalization costs, co-owners and other interested parties with names and addresses, business or other purpose for establishment, description of your involvement in the establishment of the entity and your current relationship)*

57.     Since June 30, 2006, I have not transferred any property, real or personal, to my wife, children or grandchildren, or any business owned by my wife, children or grandchildren, except: (*list the name and address of individual or entity receiving property, the property transferred, the value of the property at the time you purchased it, the value of the property at the time of transfer*)

58.     Since June 30, 2006, I have not transferred any money ( in any form, including cash,

checks, funds in a money market account, funds in a mutual fund, etc.) to my wife, children or

grandchildren, or any business owned by my wife, children or grandchildren, except: (*list the

name and address of individual or entity receiving money, the amount of money transferred, the

value of the money at the time you acquired it, the value of the money at the time of transfer)*

.

59.     Since June 30, 2006, I have not transferred any money ( in any form, including cash, checks, funds in a money market account, funds in a mutual fund, etc.), real property or personal property to a trust, for the benefit of my wife, children or grandchildren, or any business owned by my wife, children or grandchildren, except: *(list the name and address of the trust; the beneficiary of the trust; the date the trust was created; the date of transfers of all money, real property, or personal property into the trust; the value of all transfers at the time of transfer; the present value of the trust)*

61

60.    I own no jewelry having a value in excess of five hundred and no/100 dollars ($500.00),

except:

     *(list for each item: description, location, and date and cost of purchase)*

61.    I own no season tickets or interest in such tickets, to any professional or college team games, except:  *(list the name of the team, type of tickets (e.g. football, basketball, etc.) value of tickets at time of purchase, donation made to the organization (e.g. college) to receive such tickets, number of years you have held such tickets)*

62.     Except for property previously stated in the Affidavit, I own no property of any nature whatsoever having a value in excess of five hundred and no/100 dollars ($500.00), except:

*(list for each item: description, location, and date and cost of purchase)*

63.     My fixed monthly expenses (mortgage, rent, utilities, insurance, food, car, medical care, dues, etc.) are as follows, and I have attached true and correct copies (front and back) of the checks, since January 1, 2012, reflecting payment of these fixed monthly expenses, collectively as **Exhibit "F."**

*(list amount and description of each fixed expense)*

65

64.    My annual salary from all sources is:

    *(list all sources and the amount of each)*

65.     I have attached true and correct copies of the tax returns (and all amendments to these tax returns) which I have filed with the Internal Revenue Service since June 30, 2006, collectively as **Exhibit "G."**

66.    I have not traveled outside the continental United States since June 30, 2006, except as follows and I have attached a true and correct copy of my passport(s) in effect since June 30, 2006 as **Exhibit "H"**:

*(state for each trip: date, destination (each town/city and country), duration, and purpose)*

67.  No one is indebted to me for money, except as follows and I have attached true and correct copies of all documents evidencing the debt owed to me by others, collectively as **Exhibit "I":**

*(list for each debt: debtor, amount, security, and due date)*

69

68.    I have no interest of any nature in any lease of real or personal property, except:

*(for each lease: describe the nature, location of the property, and  amount, frequency and duration of payments)*

70

69.     I know of no other material facts relating to my current financial condition, except:

*(describe)*

70.     My full name, and all other names I have used, and my date of birth, social security

number (tax identification number) and driver's license number are as follows:

71.     My nearest living relatives identified by names, current addresses, and current telephone

        numbers, are as follows:

        A.     Spouse:

        B.     Parents:

        C.     Children:

        D.     Other:

72.    My emergency contact identified by name, current address, and current telephone number is as follows:

**I understand that any materially false, fictitious, or fraudulent statement or representation made knowingly and willfully in this affidavit is punishable by fine and/or imprisonment under the provisions of 18 U.S.C. § 1001.**

**I SWEAR UNDER PENALTY OF PERJURY THAT THE ABOVE IS A TRUE AND CORRECT STATMENT.**

_____
Mark Atchison

SUBSCRIBED AND SWORN to before me on this _____day of _____, 2012.

_____
Notary Public

_____
Printed name:

_____
Commission Expires

74

## INDEX OF EXHIBITS

|  | Exhibit |
|---|---|
| Copies of Divorce Decree an Property Settlement | A |
| Copies of Financial Institution Statements for the Past 3 Years | B |
| Copies of Brokerage Account Statements for the Past 3 Years | C |
| Copies of Other Account Statements for the Past 3 Years | D |
| Copies of Financial Statements since June 30, 2006 | E |
| Copies of Monthly Expense Checks since January 1, 2012 | F |
| Copies of Federal Income Tax Returns since June 30, 2006 | G |
| Copies of Passport(s) since June 30, 2006 | H |
| Copies of Documents Evidencing Debt to Affiant | I |

Zuber Landscape Incorporated Davis-Bacon Turnkey Pension Plan

Nationwide account allocation

source: summary participant account statements and Jacob, Haxton, Boord contract reports

| Participant | 2006* | loc** | total |
|---|---|---|---|
| Patrick Beyer | 84.25 | 33.43 | 117.69 |
| Terry Bobb | 5,600.88 | 2,222.72 | 7,823.60 |
| Dennis Dearing | 100.91 | 40.05 | 140.96 |
| Eric Deck | 212.24 | 84.23 | 296.47 |
| Jeff Dingey | 659.99 | 261.92 | 921.91 |
| Richard Enochs | 18.13 | 7.19 | 25.33 |
| Randy Hogue | 119.09 | 47.26 | 166.35 |
| Cassius Hooper | 273.99 | 108.73 | 382.72 |
| Frederic Kinney | 15.77 | 6.26 | 22.03 |
| Willie Kinney | 3,070.97 | 1,218.72 | 4,289.69 |
| Donald Macleod | 7,604.02 | 3,017.66 | 10,621.69 |
| Jeffrey Mather | 52.75 | 20.93 | 73.68 |
| Chad Olimpia | 542.07 | 215.12 | 757.19 |
| John Pairs | 1,517.43 | 602.19 | 2,119.62 |
| William Spencer | 2,185.16 | 867.18 | 3,052.34 |
| Gary Vanhoy | 80.26 | 31.85 | 112.11 |
| Kerry Whitmor | 22.03 | 8.74 | 30.77 |
| David Wooten | 141.99 | 56.35 | 198.34 |
| total | 22,301.93 | 8,850.55 | 31,152.48 |

*Balances as of date of distribution to Plan trustee, June 28, 2006.

**LOC as of March 15, 2013

☑ SHARE  ▦ ⌄ ▭ .

# Field Assistance Bulletin 2004-02

September 30, 2004

Memorandum For: Virginia C. Smith
Director of Enforcement, Regional Directors

From: Robert J. Doyle
Director of Regulations and Interpretations

Subject: Fiduciary Duties and Missing Participants in Terminated Defined Contribution Plans

## Issue

What does a plan fiduciary need to do in order to fulfill its fiduciary obligations under ERISA with respect to: (1) locating a missing participant of a terminated defined contribution plan; and (2) distributing an account balance when efforts to communicate with a missing participant fail to secure a distribution election?

## Background

All plan assets must be distributed as soon as administratively feasible after the date of a plan termination in order to effectively complete a plan termination under Internal Revenue Code requirements.[1]  Prior to any distribution, the Code requires a plan administrator to contact all participants for affirmative directions regarding distribution of their account balances.[2]  This notice requirement extends to all participants, regardless of their length of service or the size of their account balances, because all participants vest in their account balances upon termination of the plan.[3]

In the context of terminated defined contribution plans, some participants may be unresponsive to written notices from plan administrators asking for direction regarding the distribution of their account balances: these participants are commonly referred to as missing participants.[4]  As a result of participants' unresponsiveness, plan administrators often are unable to effectively wind–up the plans' financial affairs and are confronted with an array of issues related to their duties under the fiduciary responsibility provisions of ERISA to search for missing participants and distribute their benefits.

The Department has previously issued guidance to fiduciaries of terminated defined contribution plans on the handling of certain missing participant issues. However, Field Offices have, in the course of their investigations, found that plan fiduciaries use a variety of methods in searching for missing participants and distributing account balances when a search proves unsuccessful. Additional guidance, therefore, has been requested concerning the obligations of plan fiduciaries that are confronted with missing participant issues in terminated defined contribution plans.[5]

## Analysis

Consistent with the requirements of section 404(a) of ERISA, a fiduciary must act prudently and solely in the interest of the plan's participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan. Also, under section 404(a)(1)(D) of ERISA, fiduciaries are required to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of Title I and IV. Section 402(b)(4) of ERISA provides that every employee benefit plan shall specify the basis on which payments are made to and from the plan. Section 403(a) of ERISA generally requires that the assets of a plan be held in trust by a trustee. In the case of plan terminations, fiduciaries must also ensure that the allocation of any previously unallocated funds is made in accordance with the provisions of section 403(d) of ERISA.

Under Title I of ERISA, the decision to terminate a plan is generally viewed as a "settlor" decision rather than a

fiduciary decision relating to the administration of the plan. However, the steps taken to implement this decision, including steps to locate missing participants, are governed by the fiduciary responsibility provisions of ERISA.[6] Further, in our view, while the distribution of the entire benefit to which a participant is entitled ends his or her status as a plan participant and the distributed assets cease to be plan assets under ERISA, a plan fiduciary's choice of a distribution option is a fiduciary decision subject to the general fiduciary responsibility provisions of ERISA.[7]

It is our view that a plan fiduciary must take certain steps in an effort to locate a missing participant or beneficiary before the plan fiduciary determines that the participant cannot be found and distributes his or her benefits in accordance with this Bulletin. These steps are identified below under the heading "Search Methods." It also is our view that, in determining any additional steps that may be appropriate with regard to a particular participant, a plan fiduciary must consider the size of the participant's account balance and the expenses involved in attempting to locate the missing participant. Accordingly, the specific steps that a plan fiduciary takes to locate a missing participant may vary depending on the facts and circumstances. This consideration of additional steps is discussed below under the heading "Other Search Options." Reasonable expenses attendant to locating a missing participant may be charged to a participant's account, provided that the amount of the expenses allocated to the participant's account is reasonable and the method of allocation is consistent with the terms of the plan and the plan fiduciary's duties under ERISA.[8]  Whatever decisions are made in connection with locating of missing participants or the distribution of assets on their behalf, plan fiduciaries must be able to demonstrate compliance with ERISA's fiduciary standards.

## Search Methods

In the context of a defined contribution plan termination, one of the most important functions of the plan's fiduciaries is to notify participants of the termination and of the plan's intention to distribute benefits. In most instances, routine methods of delivering notice to participants, such as first class mail or electronic notification, will be adequate. In the event that such methods fail to obtain from the participant the information necessary for the distribution, or the plan fiduciary has reason to believe that a participant has failed to inform the plan of a change in address, plan fiduciaries need to take other steps to locate the participant or a beneficiary. In our view, some search methods involve such nominal expense and such potential for effectiveness that a plan fiduciary must always use them, regardless of the size of the participant's account balance. A plan fiduciary cannot distribute a missing participant's benefits in accordance with the distribution options discussed below unless each of these methods proves ineffective in locating the missing participant. However, a plan fiduciary is not obligated to take each of these steps if one or more of them are successful in locating the missing participant. These methods are:

1. **Use Certified Mail**. Certified mail can be used to easily ascertain, at little cost, whether the participant can be located in order to distribute benefits.

2. **Check Related Plan Records**. While the records of the terminated plan may not have current address information, it is possible that the employer or another plan of the employer, such as a group health plan, may have more up-to-date information with respect to a given participant or beneficiary. For this reason, plan fiduciaries of the terminated plan must ask both the employer and administrator(s) of related plans to search their records for a more current address for the missing participant. If there are privacy concerns, the plan fiduciary that is engaged in the search can request the employer or other plan fiduciary to contact or forward a letter on behalf of the terminated plan to the participant or beneficiary, requesting the participant or beneficiary to contact the plan fiduciary.

3. **Check With Designated Plan Beneficiary**. In connection with a search of the terminated plan's records or the records of related plans, plan fiduciaries must attempt to identify and contact any individual that the missing participant has designated as a beneficiary (e.g., spouse, children, etc.) for updated information concerning the location of the missing participant. Again, if there are privacy concerns, the plan fiduciary can request the designated beneficiary to contact or forward a letter on behalf of the terminated plan to the participant, requesting the participant or beneficiary to contact the plan fiduciary.

4. **Use A Letter-Forwarding Service**. Both the Internal Revenue Service (IRS) and the Social Security Administration (SSA) offer letter-forwarding services. Plan fiduciaries must choose one service and use it in

Case: 2:12-cv-00417-EAS-MRA Doc #: 8 Filed: 03/19/13 Page: 88 of 92 PAGEID #: 112

attempting to locate a missing participant or beneficiary. The IRS has published guidelines under which it will forward letters for third parties for certain "humane purposes," including a qualified plan administrator's attempt to locate and pay a benefit to a plan participant.[9] The SSA's letter forwarding service may be used for similar purposes, and is described on the SSA's Web site.[10] It is our understanding that to use either the IRS or SSA program, the plan fiduciary/requestor must submit a written request for letter forwarding to the agency, and must provide the missing participant's social security number or certain other identifying information. Both the IRS and SSA will search their records for the most recent address of the missing participant and will forward a letter from the plan fiduciary/requestor to the missing participant if appropriate. In using these letter-forwarding services to notify a missing participant that he or she is entitled to a benefit, the plan fiduciary's letter should provide contact information for claiming the benefit. This notice may also suggest a date by which the participant must respond, as neither the IRS nor the SSA will notify the plan fiduciary as to whether the participant was located.

**Other Search Options**

In addition to using the search methods discussed above, a plan fiduciary should consider the use of Internet search tools, commercial locator services, and credit reporting agencies to locate a missing participant. Depending on the facts and circumstances concerning a particular missing participant, it may be prudent for the plan fiduciary to use one or more of these other search options. If the cost of using these services will be charged to the missing participant's account, plan fiduciaries will need to consider the size of the participant's account balance in relation to the cost of the services when deciding whether the use of such services is appropriate.

# Distribution Options

There will be circumstances when, despite their use of the search methods described above, plan fiduciaries will be unable to locate participants or otherwise obtain directions concerning the distribution of their benefits from terminated defined contribution plans. In these circumstances, plan fiduciaries will nonetheless have to consider distribution options in order to effectuate the termination of the plan.[11] We have set forth below the fiduciary considerations that are relevant to the various options available to plan fiduciaries in the context of missing participants of terminated defined contribution plans.

**Individual Retirement Plan Rollovers** - In our view, plan fiduciaries must always consider distributing missing participant benefits into individual retirement plans (i.e., an individual retirement account or annuity).[12] Establishing an individual retirement plan is the preferred distribution option because it is more likely to preserve assets for retirement purposes than any of the other identified options.

Distribution to an individual retirement plan preserves retirement assets because it results in a deferral of income tax consequences for missing participants. A distribution that qualifies as an eligible rollover distribution[13] from a qualified plan, which is handled by a trustee to trustee transfer into an individual retirement plan, will not be subject to immediate income taxation, the 20 percent mandatory income tax withholding requirement, or the 10 percent additional tax for premature distributions that may be required based on the participant's age and related facts.[14]

As we have noted in other contexts, the choice of an individual retirement plan also raises fiduciary issues as to the particular choice of an individual retirement plan trustee, custodian or issuer as well as the selection of an initial individual retirement plan investment to receive the distribution.[15] By regulation, the Department established a safe harbor for plan fiduciaries to satisfy their fiduciary responsibility under section 404(a) of ERISA when selecting individual retirement plan providers and initial investments in connection with the rollover of certain mandatory distributions to individual retirement plans.[16] In general, this regulation applies to distributions of $5,000 or less for separating participants who leave an employer's workforce without making an election to either receive a taxable cash distribution or directly roll over assets into an individual retirement plan or another qualified plan.

In our view, the circumstances giving rise to relief under this safe harbor regulation are similar to those confronting fiduciaries of terminated defined contribution plans. Therefore, in the context of making distributions from terminated defined contribution plans on behalf of participants who are determined to be missing or otherwise fail to elect a method of distribution in connection with the termination, fiduciaries who choose investment products

that are designed to preserve principal should, as an enforcement matter, be treated as satisfying their fiduciary duties in connection with such distributions, when the fiduciary complies with the relevant requirements of the automatic rollover safe harbor regulation, without regard to the amount involved in the rollover distribution.[17]

**Alternative Arrangements** - If a plan fiduciary is unable to locate an individual retirement plan provider that is willing to accept a rollover distribution on behalf of a missing participant, plan fiduciaries may consider either establishing an interest-bearing federally insured bank account in the name of a missing participant or transferring missing participants' account balances to state unclaimed property funds. In this regard, fiduciaries should be aware that transferring a participant's benefits to either a bank account or state unclaimed property fund will subject the deposited amounts to income taxation, mandatory income tax withholding and a possible additional tax for premature distributions. Moreover, interest accrued would also be subject to income taxation. Plan fiduciaries should not use 100% income tax withholding as a means to distribute plan benefits to missing participants.

**Federally Insured Bank Accounts** - Plan fiduciaries may consider establishing an interest bearing federally insured bank account in the name of a missing participant, provided the participant would have an unconditional right to withdraw funds from the account. In selecting a bank and accepting an initial interest rate, with or without a guarantee period, a plan fiduciary must give appropriate consideration to all available information relevant to such selection and interest rate, including associated bank charges.

**Escheat To State Unclaimed Property Funds** - As an alternative, plan fiduciaries may also consider transferring missing participants' account balances to state unclaimed property funds in the state of each participant's last known residence or work location. We understand that some states accept such distributions on behalf of missing participants. We also understand that states often provide searchable Internet databases that list the names of property owners and, in some instances, award minimal interest on unclaimed property funds.

In prior guidance, the Department concluded that, if a state unclaimed property statute were applied to require an ongoing plan to pay to the state amounts held by the plan on behalf of terminated employees, the application of that statute would be preempted by section 514(a) of ERISA.[18] However, we do not believe that the principles set forth in Advisory Opinion 94-41A, which dealt with a plan fiduciary's duty to preserve plan assets held in trust for an ongoing plan, prevent a plan fiduciary from voluntarily deciding to escheat missing participants' account balances under a state's unclaimed property statute in order to complete the plan termination process.

Additionally, we believe that a plan fiduciary's transfer of a missing participant's account balance from a terminated defined contribution plan to a state's unclaimed property fund would constitute a plan distribution, which ends both the property owner's status as a plan participant and the property's status as plan assets under ERISA.[19]

In deciding between distribution into a state unclaimed property fund and distribution into a federally insured bank account, we believe that a plan fiduciary should evaluate any interest accrual and fees associated with a bank account against the availability of the state unclaimed property fund's searchable database that may facilitate the potential for recovery. In any event, transfer to state unclaimed property funds must comply with state law requirements.

**100% Income Tax Withholding** - We are aware that some plan fiduciaries believe that imposing 100% income tax withholding on missing participant benefits, in effect transferring the benefits to the IRS, is an acceptable means by which to deal with the benefits of missing participants. After reviewing this option with the staff of the Internal Revenue Service, we have concluded that the use of this option would not be in the interest of participants and beneficiaries and, therefore, would violate ERISA's fiduciary requirements. Based on discussions with the IRS staff and our understanding of the IRS's current data processing, the 100% withholding distribution option would not necessarily result in the withheld amounts being matched or applied to the missing participants'/taxpayers' income tax liabilities resulting in a refund of the amount in excess of such tax liabilities.[20] This option, therefore, should not be used by plan fiduciaries as a means to distribute benefits to plan participants and beneficiaries.

### Miscellaneous Issues

Fiduciaries have expressed concerns about legal impediments that might hinder the establishment of individual

retirement plans or bank accounts on behalf of missing participants. These impediments include perceived conflicts with the customer identification and verification provisions of the USA PATRIOT Act (Act).[21] With regard to this problem, we note that Treasury staff, along with the staff of the other Federal functional regulators,[22] has issued helpful guidance for fiduciaries that are establishing an individual retirement plan or federally insured bank account in the name of a missing participant. This guidance was published in a set of questions and answers on the customer identification and verification provision (CIP) of the Act, "FAQs: Final CIP Rule," on the regulators' Web sites.[23]

The Federal functional regulators advised the Department that they interpret the CIP requirements of section 326 of the Act and implementing regulations to require that banks and other financial institutions implement their CIP compliance program with respect to an account (including an individual retirement plan or federally insured bank account) established by an employee benefit plan in the name of a former participant (or beneficiary) of such plan, only at the time the former participant or beneficiary first contacts such institution to assert ownership or exercise control over the account. CIP compliance will not be required at the time an employee benefit plan establishes an account and transfers the funds to a bank or other financial institution for purposes of a distribution of benefits from the plan to a separated employee.

With regard to the application of state laws, including those governing signature requirements and escheat, we note that such issues are beyond the Department's jurisdiction.

## Conclusion

Actions taken to implement the decision to terminate a plan, including the search for missing participants, and if search efforts fail, the selection of a distribution option for the benefits of missing participants, are governed by the fiduciary responsibility provisions of ERISA. In fulfilling their duties of prudence and loyalty to missing participants, we believe there are certain search methods which involve such nominal expense and potential for effectiveness that fiduciaries must always use them, regardless of the size of the account balance, as discussed in detail above.

We also believe that these duties require that fiduciaries consider establishing individual retirement plans as the preferred method of distribution for the benefits of missing participants. In this regard, the selection of an individual retirement plan provider and the initial investment for an individual retirement plan also constitute fiduciary decisions. If plan fiduciaries are unable to locate an individual retirement plan provider that is willing to accept a rollover distribution, fiduciaries may consider distributing a missing participant's benefits into a federally insured bank account or transferring a missing participant's benefit to a state unclaimed property fund; the factors to be considered in choosing between these options are discussed more fully above.

Questions concerning the information contained in this Bulletin may be directed to the Division of Fiduciary Interpretations, Office of Regulations and Interpretations, 202.693.8510.

## Footnotes

1. See Rev. Rul. 89-87, 1989-2 C.B. 81.

2. Under Internal Revenue Code (Code) §402(f), a plan administrator is required, prior to making an eligible rollover distribution, to provide the participant with a written explanation of the Code provisions under which the participant may elect to have the distribution transferred directly to an IRA or another qualified plan, the provision requiring tax withholding if the distribution is not directly transferred and the provisions under which the distribution will not be taxed if the participant transfers the distribution to an IRA or another qualified plan within 60 days of receipt.

3. Under Code §411(d)(3), a plan must provide that, upon its termination or complete discontinuance of contributions, benefits accrued to the date of termination or discontinuance of contributions become vested to the extent funded on such date.

4. The Department notes that this guidance applies only in the context of terminated defined contribution plans. For rules governing the Pension Benefit Guaranty Corporation's missing participants program, which applies to

terminated defined benefit plans covered by Title IV of ERISA, see ERISA § 4050 and 29 CFR § 4050.

5. This guidance assumes that the terminated plan does not provide an annuity option and that no other appropriate defined contribution plans are maintained within the sponsoring employer's corporate group to which account balances from the terminated plan could be transferred..

6. See Advisory Opinion 2001-01A (Jan. 18, 2001); see also Letter to John N. Erlenborn from Dennis M. Kass (Mar. 13, 1986).

7. See Rev. Rul. 2000-36 where the Department stated that the selection of an IRA trustee, custodian or issuer and of an IRA investment for purposes of a default rollover pursuant to a plan provision would constitute a fiduciary act under ERISA.

8. See generally Field Assistance Bulletin 2003-3 (May 19, 2003) for the Department's views with respect to expense allocations in defined contribution plans. See also Rev. Rul. 2004-10, 2004-7 I.R.B. (Jan. 29, 2004).

9. See Rev. Proc. 94-22, 1994-1 C.B. 608; IRS Policy Statement P-1-187.

0. The Social Security Administration's Web site is found at www.ssa.gov.

1. See supra footnote 1.

2. Code §7701(a)(37) defines an "individual retirement plan" to mean an individual retirement account described in Code §408(a) and an individual retirement annuity described in Code §408(b).

3. An "eligible rollover distribution" is, subject to certain limited exceptions, any distribution to an employee of all or any portion of the balance to the credit of the employee in a qualified trust. See Code §402(c) and (f)(2)(A).

4. Code §402(a), §3405(c), and §72(t).

5. See supra footnote 6.

6. See 29 C.F.R. §2550.404a-2.

7. It should be noted that Class Exemption (PTE No. 2004-16) generally provides relief from ERISA's prohibited transaction provisions for a plan fiduciary's selection of itself as the provider of an Individual retirement plan and/or issuer of an investment in connection with rollovers of missing participant accounts for amounts up to $5,000.

8. Advisory Opinion 94-41A (Dec. 7, 1994).

9. Prior Departmental Advisory Opinions addressed distributions from ongoing plans. See, e.g., Advisory Opinion 94-41A (Dec. 7, 1994); Advisory Opinion 79-30A (May 14, 1979); Advisory Opinion 78-32A (Dec. 22, 1978). We note, however, that this memorandum addresses only distributions that complete the termination of defined contribution plans. ·

0. See, e.g., Code section 6511 (regarding the time limitations for taxpayer refunds).

1. Pub. L. No. 107-56, Oct. 26, 2001, 115 Stat. 272.

2. The term "other Federal functional regulators" refers to the other agencies responsible for administration and regulations under the Act.

3. See "FAQs: Final CIP Rule" at:
www.occ.treas.gov/10.pdf
www.fincen.gov/finalciprule.pdf
www.fdic.gov/news/news/financial/2004/FIL0404a.html

Advanced Pension Solutions

(614) 501-7790
6830 Commerce Court Drive
Blacklick, OH 43004

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/7/2011 | 20273 |

| Bill To |
|---------|
| Zuber Landcape<br>c/o Dept. of Labor |

| | Terms | Due Date |
|---|-------|----------|
| | | 4/7/2011 |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 5500 | Preparation of Internal Revenue Service Form 5500<br>Summary Annual Report<br>2011 Final 5500 Filing | 1 | 500.00 | 500.00 |
| Amendment | Plan Amendment to terminate | 1 | 150.00 | 150.00 |
| Distribution | Distribution Fee | 9 | 75.00 | 675.00 |

| | |
|---|---|
| **Total** | $1,325.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $1,325.00 |